NOT FOR PUBLICATION

```
         IN THE UNITED STATES DISTRICT COURT
            FOR THE DISTRICT OF NEW JERSEY
                    CAMDEN VICINAGE
```

|  |  |
|---|---|
| ANTHONY KUCZEWSKI, | |
| Plaintiff, | Civil No. 12-43 (RMB) |
| v. | |
|  | **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Appearances:

    Alan H. Polonsky, Esq.
    Polonsky & Polonsky
    512 S. White Horse Pike
    Audubon, NJ 08106
        Attorney for Plaintiff

    Karen T. Callahan, Esq.
    Social Security Administration
    Office of the General Counsel
    26 Federal Plaza, Room 3904
    New York, NY 10278
        Attorney for Defendant

**BUMB**, UNITED STATES DISTRICT COURT JUDGE.

    Plaintiff Anthony Kuczewski ("Plaintiff") seeks review pursuant to 42 U.S.C. § 405(g) of the Commissioner of Social

1

Security's (the "Commissioner's") final decision denying his claim for disability insurance benefits ("DIB") under Title II of the Social Security Act. For the reasons set forth below, the Court REMANDS this case to the administrative law judge ("ALJ") for further proceedings.

## I. STANDARD OF REVIEW

When reviewing a final decision of the Social Security Commissioner, the court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." Knepp v. Apfel, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Cons. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)); Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. See Friedberg v. Schweiker, 721 F.2d 445, 447 (3d Cir. 1983); Sykes v. Apfel, 228 F.3d 259, 262 (3d Cir. 2000). The Court's review of legal issues is plenary. Sykes, 228 F.3d at 262 (citing Schaudeck v. Comm'r of Soc. Sec., 181 F.3d 429, 431 (3d Cir. 1999)).

**"Disability" Defined**

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. § 404.1520(a)(4)(i-v). In Plummer, 186 F.3d at 428, the Third Circuit described the Commissioner's inquiry at each step of this analysis:

> In step one, the Commissioner must determine whether the claimant is currently engaging in substantial gainful activity. 20 C.F.R. § 1520(a). If a claimant is found to be engaged in substantial activity, the disability claim will be denied. Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

In step two, the Commissioner must determine whether the claimant is suffering from a severe impairment. 20 C.F.R. § 404.1520(c). If the claimant fails to show that [his] impairments are "severe," [he] is ineligible for disability benefits.

In step three, the Commissioner compares the medical evidence of the claimant's impairment to a list of impairments presumed severe enough to preclude any gainful work. 20 C.F.R. § 404.1520(d). If a claimant does not suffer from a listed impairment or its equivalent, the analysis proceeds to steps four and five.

Step four requires the ALJ to consider whether the claimant retains the residual functional capacity[1] to perform [his] past relevant work. 20 C.F.R. § 404.1520(d). The claimant bears the burden of demonstrating an inability to return to [his] past relevant work. Adorno v. Shalala, 40 F.3d 43, 46 (3d Cir. 1994). If the claimant is unable to resume [his] former occupation, the evaluation moves to the final step.

At this [fifth] stage, the burden of production shifts to the Commissioner, who must demonstrate the claimant is capable of performing other available work in order to deny a claim of disability. 20 C.F.R. § 404.1520(f). The ALJ must show there are other jobs existing in significant numbers in the national economy which the claimant can perform, consistent with [his] medical impairments, age, education, past work experience, and residual functional capacity. The ALJ must analyze the cumulative effect of all the claimant's impairments in determining whether [he] is capable of performing work and is not disabled. See 20 C.F.R. § 404.1523. The ALJ will often seek the assistance of a vocational expert at this fifth step. See Podedworny v. Harris, 745 F.2d 210, 218 (3d Cir. 1984).

## II. BACKGROUND

---

[1] "Residual functional capacity" is the most the claimaint can still do despite the limitations caused by his impairments. 20 C.F.R. §

Plaintiff was born on September 18, 1962, and is now 50 years old. A car struck him when he was 15 years old, and he suffers from leg and back impairments as a result. He filed a Title II application for disability insurance benefits on February 15, 2009. Administrative Record ("R.") 13. On February 21, 2009, he filed a Title XVI application for supplemental security income ("SSI"). In both applications, Plaintiff alleged disability beginning on August 31, 2002. Both claims were initially denied and again denied on reconsideration. Plaintiff requested a hearing on October 1, 2009, which was granted. Administrative Law Judge Daniel N. Shellhamer conducted the hearing on October 5, 2010. At the ALJ's request, Plaintiff then attended two consultative examinations. Following these examinations, the ALJ conducted a second hearing on April 5, 2011. Plaintiff testified at both hearings as did Ted C. Mantegna, an impartial vocational expert. On April 27, 2011, the ALJ issued a decision finding that Plaintiff was disabled as of the date of his Title II application, February 15, 2009, but not on or before the date last insured, December 31, 2007. The ALJ granted Plaintiff's Title XVI application for SSI but denied his Title II application for DIB. R. 13-20.

Applying the five-step analysis described above, the ALJ

---

404.1545(a)(1).

concluded that (1) Plaintiff was not currently employed in substantial gainful activity; (2) as of the alleged onset date of disability (August 31, 2002), he had the following severe impairments: status post open reduction, internal fixation, leg length discrepancy, gait dysfunction, low back pain, and absent left patella; and as of the established onset date of disability (February 15, 2009), he also had the additional impairments of chronic pain and depression; (3) these impairments did not meet the criteria for listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) Plaintiff lacked the residual functional capacity to perform his past work; and (5) there were other jobs that exist in significant numbers in the national economy that Plaintiff could have performed prior to February 15, 2009, but no such jobs existed thereafter.

Plaintiff appealed the ALJ's decision. On December 23, 2011, the Appeals Council granted Plaintiff's request for review of the Title XVI claim – which it vacated and remanded – but denied Plaintiff's request for review of the Title II decision. R. 25-29, 30. The ALJ's decision denying Title II benefits therefore became the final decision of the Commissioner. R. 30-33. Plaintiff subsequently appealed the Title II decision to this Court.

Because this appeal turns on a discrete legal issue, the Court will not recite Plaintiff's medical history except as necessary to

6

the discussion.

## III. ANALYSIS

Plaintiff argues that the ALJ erred in concluding that he is not disabled. He seeks a reversal of this decision or, in the alternative, a remand. His appeal advances two arguments: first, that substantial evidence does not support the ALJ's conclusion at the fifth step of the sequential analysis that there were other jobs that exist in significant numbers in the national economy that Plaintiff could have performed prior to February 15, 2009; and second, that the ALJ's finding that Plaintiff was disabled on February 15, 2009, but not on or before the date last insured (December 31, 2007), is not logical or supported by an adequate rationale. The Court considers each argument in turn.

### A. The ALJ's Determination at Step Five

At step five, the Commissioner has the burden of proving that jobs exist in significant numbers in the national economy, which the claimant can perform given his medical impairments, age, education, past work experience, and residual functional capacity. Plummer, 186 F.3d at 428; Sykes, 228 F.3d at 263, 266 (citing Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987).

Citing the vocational expert's testimony, the ALJ concluded that as of the date last insured, Plaintiff could have performed the

7

simple assembler job, of which there were 650,000 jobs nationally and 2,200 jobs regionally. R. 19.

Plaintiff argues that the vocational expert's testimony does not support this conclusion and that based on the existing record, "we have no idea" whether there are a significant number of jobs that Plaintiff could perform. Pl.'s Br. 11-12, 16. The Court agrees.

At the first hearing, on October 5, 2010, the vocational expert described Plaintiff's past work. R. 380. He then gave a general description of the simple assembler job, noting that it is sedentary and unskilled and that there are approximately 650,000 such jobs in the national economy and 200[2] such jobs in New Jersey. R. 381.[3] The ALJ then adjourned the hearing so that Plaintiff could be examined and his impairments assessed. R. 384. At the second hearing, on

---

[2] This appears to be a typo in the transcript of the October 5th hearing. In the ALJ's opinion, as noted above, the ALJ found that 2,200 simple assembler jobs exist in New Jersey. Since the Court remands this case, it need not resolve this discrepancy.
[3] Additionally, Plaintiff testified that he could only sit for approximately two hours before he needed to walk around, and that after that, he could only sit for half an hour at a time. R. 375-76. Plaintiff also testified that since 2002, he has been in so much pain that he has had difficulty concentrating on work. R. 379. After the vocational expert described the simple assembler job, the ALJ asked him if someone could perform that job if he had difficulty working or focusing for more than two-hour increments. R. 382-83. The vocational expert responded that such a person could not perform the simple assembler job. This did not end the disability analysis, however, because, as set forth in the ALJ's opinion, the ALJ found Plaintiff not credible in his description of his pain prior to February 15, 2009. R. 17.

April 5, 2011, the parties discussed a report written by Dr. Kenneth Goldberg, a psychologist who determined that Plaintiff is neurologically impaired and has a cognitive disorder, borderline intellectual functioning, and an IQ of 75, which puts him in the 5th percentile of the population.[4]  R. 329-334.  Plaintiff's counsel argued that based on Dr. Goldberg's assessment, Plaintiff's aptitude for "general learning ability" according to the Dictionary of Occupational Titles ("DOT") is a "Level 5", because that level applies to the lowest 10th percentile of the population.  R. 396-403.  Plaintiff's counsel represented – and the vocational expert agreed – that no jobs exist, according to the DOT, with a Level 5 for "general learning ability".[5]  Plaintiff's counsel also argued that Plaintiff could not perform the simple assembler job, identified by the ALJ

---

[4] Dr. Goldberg determined that Plaintiff has a "full scale" IQ of 75, which puts him in the 5th percentile, and a "general ability" score of 72, which puts him in the 3rd percentile for that category.  R. 330.

[5] The Department of Labor publishes the DOT, which contains descriptions of the requirements for thousands of jobs that exist in the national economy.  Martin v. Barnhart, 240 F. App'x 941, 943 (3d Cir. 2007).  The DOT recognizes eleven aptitudes, one of which measures "general learning ability."  Pl.'s Ex. 1.  This aptitude concerns "the ability to 'catch on' or understand instructions and underlying principles; the ability to reason and make judgments.  Closely related to doing well in school."  Id.  The DOT recognizes five levels for this aptitude.  Level 1 applies to jobs requiring the highest degree of "general learning ability", while Level 5 applies to the lowest level.  According to the DOT, individuals who fall below the 11th percentile are at a Level 5.  Id.

9

in the prior hearing, because it requires a Level 4 "general learning ability", which denotes the 11th to 33rd percentile.  Id.

The ALJ then asked the vocational expert if the fact that a person has an IQ in the lowest 10th percentile necessarily means he cannot perform any of the unskilled jobs they had been discussing. R. 403.  The vocational expert responded that "as a general guideline" yes, but also noted that there were "exceptions to the rule" where some people with very low IQ's could be trained to do simple, repetitive, ongoing jobs.  R. 404.  He noted that this would depend on the specific circumstances, such as the motivation of the individual and whether the employer was sympathetic to the claimant's situation.  R. 404-06.

A reasonable inference from this testimony is that Plaintiff's cognitive deficiencies (a nonexertional impairment) would significantly erode the occupational base of the category of work that Plaintiff could otherwise perform given his exertional impairments.[6]  Notably, the vocational expert never rendered an

---

[6] Limitations are exertional if they affect the ability to meet the strength demands of a job and include sitting, standing, walking, lifting, carrying, pushing, and pulling.  20 C.F.R. § 416.969a(a) Limitations are non-exertional if they affect the claimant's ability to meet the demands of a job other than strength demands, such as difficulty understanding or remembering detailed instructions.  20 C.F.R. § 416.969a(c)(iii).

10

opinion on the number of jobs actually available to Plaintiff or someone with his combination of impairments.

Since the ALJ recognized that Plaintiff has both exertional and nonexertional limitations, such vocational evidence was critical to satisfy the Commissioner's burden of proof at this stage. Sykes v. Apfel, 228 F.3d 259, 273 (3d Cir. 2000) (where claimant has both exertional and nonexertional limitations, Commissioner cannot rely exclusively on Medical Vocational Guidelines but must provide "the testimony of a vocational expert or other similar evidence, such as a learned treatise" to satisfy burden of showing that there were jobs in the national economy that someone with claimant's combination of impairments could perform); Hall v. Comm'r of Soc. Sec., 218 F. App'x 212 (3d Cir. 2007) ("Because the ALJ recognized in her decision several nonexertional limitations. . . the ALJ's [exclusive] reliance on the grids constitutes reversible error under our decision in Sykes."); Andrews v. Astrue, Civ. No. 10-4932, 2011 WL 6756967, *15 (D.N.J. Dec. 21, 2011) (remanding case where claimant had non-exertional impairments and ALJ failed to consult vocational expert to determine whether jobs exist in significant numbers in national economy that claimant could perform); Soc. Sec. Acquiescence Ruling, AR 01-1(3) (Jan. 25, 2001); S.S.R. 83-14, *6 (1983). In light of this gap in the record, the Court will remand

this matter to the ALJ for further proceedings with the vocational expert to determine the number of jobs available to Plaintiff in light of his age, impairments, education, work experience, and residual functional capacity.  See Hall, 218 F. App'x at 217; Sykes, 228 F.3d at 266; Andrews, 2011 WL 6756967, *15; see also Darwin v. Astrue, Civ. No. 10-3383, 2011 WL 1154673, *1-2 (E.D. Pa. Mar. 30, 2011) (remanding case where ALJ did not elicit from vocational expert testimony regarding specific jobs that plaintiff was capable of performing and their numbers in the national economy); Thompson v. Barnhart, 281 F. Supp. 2d 770, 781-82 (E.D. Pa. 2003) (same); see also 2 Barbara Samuels, Soc. Sec. Disab. Claims Prac. & Proc. § 19:62 n.2 (2d ed. 2012) ("Remand is appropriate where the record is incomplete.") (collecting cases).

**B. The Disability Onset Date**

Next, Plaintiff argues that the ALJ's finding that Plaintiff was disabled on February 15, 2009, but not on or before the date last insured (December 31, 2007), is not logical or supported by an adequate rationale.  The Court agrees that the onset date recognized by the ALJ seems arbitrary, since nothing significant happened on this date except that Plaintiff filed for disability.  Plaintiff firmly maintains that the disability onset date was in 2002, when he lost his job.  The Court notes, however, that Plaintiff produced

12

virtually no medical records to establish his disability as of December 31, 2007.[7]  In any event, this issue is premature because the Appeals Council has vacated the ALJ's decision finding Plaintiff disabled as of February 15, 2009 (and granting him Title XVI benefits) and has remanded the case to the ALJ to obtain additional evidence and give further consideration to the matter.  R. 27-29.  Thus, the ALJ may very well reconsider his decision that Plaintiff became disabled on February 15, 2009.  Accordingly, the Court declines to decide this issue because it is not yet ripe.

### III. CONCLUSION

For the reasons set forth above, the decision below is VACATED, and this case is REMANDED to the ALJ for further consideration consistent with this Opinion.  An accompanying Order will issue this date.

s/Renée Marie Bumb<br>
RENÉE MARIE BUMB<br>
UNITED STATES DISTRICT JUDGE

Dated: March 12, 2013

---

[7] "The only medical record submitted by the claimant is Exhibit 12F, which consists of four pages of office notes, but does not document ongoing treatment or significant objective findings."  SSA Order of Appeals Council, Dec. 23, 2011, R. 27.